IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH - CENTRAL DIVISION

| | |
|---|---|
| C&M PROPERTIES, LLC,<br><br>        Appellee/Cross-Appellant,<br><br>vs.<br><br>RICHARD D. BURBIDGE, et al.,<br><br>        Appellants/Cross-Appellees. | **MEMORANDUM DECISION<br>AND ORDER**<br><br>District Court Case No. 2:05cv121 |

## I.   INTRODUCTION

Appellant C&M Properties, LLC has appealed the bankruptcy court's June 9, 2006 order

granting Appellee Burbidge & Mitchell's motion to dismiss which was treated by the bankruptcy

court as a motion for summary judgment.  By its order, the bankruptcy court dismissed C&M's

adversary proceeding for legal malpractice against Burbidge & Mitchell with prejudice on

judicial estoppel grounds.

## II.   FACTUAL BACKGROUND

C&M is a limited liability company that owned real property located in the proximity of

The Canyons Resort in Summit County, Utah.  (C&M App. at 0269).  Due to ongoing disputes

with Canyon Estates Homeowners' Assocation, Inc. and American Skiing Company involving

the real property, C&M hired the law firm of Burbidge & Mitchell to represent its interests in

December 2000.  In 2001, one of C&M's secured creditors filed a Notice of Default on a trust

deed secured by the real property and was proceeding toward a December 2001 non-judicial

foreclosure sale.  (C&M App. at 0269 & 0732).  C&M contemplated seeking bankruptcy

protection during the months leading up to the foreclosure sale.  At this time, the principals of

C&M had some preliminary discussions regarding the possibility of filing a legal malpractice

claim against Burbidge & Mithcell due to some dissatisfaction with Burbidge & Mitchell's legal

services, but had not filed a lawsuit or made a final decision about the matter.  (C&M App. at

0740-41).  Also, at this time Burbidge & Mitchell had submitted a bill to C&M for its legal

services in the amount of approximately $63,000.00.

Eventually, on December 11, 2001, C&M filed a petition pursuant to Chapter 11 of the

bankruptcy code.  (C&M App. at 0015).  Burbidge & Mitchell was listed as a creditor in C&M's

schedules and statements filed with the bankruptcy court.  (C&M App. at 0521).  C&M did not

disclose a specific claim against Burbidge & Mitchell in its bankruptcy schedules and

statements.  C&M only disclosed "possible claims . . . against professionals" as contingent assets

of the estate with a listed value of "unknown."  (C&M 2nd App. at 0054).  On March 7, 2002,

Burbidge & Mitchell filed a proof of claim in C&M's bankruptcy case in the amount of

$62,940.60 as a general unsecured claim for unpaid legal services.  (C&M App. at 0528).

Throughout the bankruptcy case, C&M filed monthly debtor in possession financial reports with

the bankruptcy court that referred to potential claims against third parties and insiders that had

not been valued.  (C&M 2nd App. at 0876, 0889, 0901, 0913, 0925, 0939 & 0951).

During the pendency of C&M's Chapter 11 case, C&M entered into a global settlement

agreement of claims raised in an adversary proceeding on July 19, 2002 with certain insiders

which released some of the contingent claims described in the schedules, but not all of them.

(C&M App. at 0070-80).  In fact, the settlement agreement specifically listed Burbidge &

2

Mitchell as persons or entities that were not released under the agreement. (C&M App. at 0081). Before the settlement agreement was approved by the bankruptcy court, Richard Burbidge allegedly called C&M's counsel and stated that Burbidge & Mitchell would not allow the settlement agreement to be approved unless it provided for a release of Burbidge & Mitchell. (C&M App. at 0717). However, Burbidge & Mitchell was not released and never formally objected to the settlement agreement which was subsequently approved by the bankruptcy court on August 21, 2001. (C&M App. at 0023).

Thereafter, the bankruptcy court approved C&M's Chapter 11 Plan of Reorganization on September 20, 2002, without specific mention or reference to a legal malpractice claim against Burbidge & Mitchell. (C&M App. at 0024). However, the Disclosure Statement provided that the Plan of Reorganization was implementing the settlement agreement of July 19, 2002. (C&M App. at 0268). Also, the Plan of Reorganization had a provision that retained all claims of the debtor for post-confirmation enforcement by C&M. (C&M App. at 0297-98). The Plan of Reorganization provided for payment of 100 cents on the dollar plus interest to all allowed unsecured creditors, with all major secured creditors being paid in full[1] from the proceeds of selling C&M's real property. (C&M App. at 0295 & 0301-04).

On January 3, 2003, approximately three and a half months after the Plan of Reorganization had been confirmed, C&M filed a complaint against Burbidge & Mitchell in state court, alleging breach of fiduciary duty and legal malpractice, and seeking $52 million in damages. (C&M App. at 0723 &0733). Burbidge and Mitchell removed the malpractice action

---

[1] One creditor, Bodell Construction agreed to accept a slight discount on its fully secured claim only it if was paid within a certain accelerated time period.

to bankruptcy court and then moved to dismiss C&M's claims because C&M had failed to

disclose them in its Chapter 11 case.  (C&M App. at 0004).  Burbidge & Mtichell argued that

C&M's failure to disclose prevented C&M from asserting the malpractice claim pursuant to the

doctrines of res judicata and judicial estoppel.


### III.    PROCEDURAL HISTORY

The bankruptcy court conducted a hearing on Burbidge & Mitchell's motion to dismiss

the legal malpractice adversary proceeding on March 6, 2003.  Although the motion was

originally captioned as a motion to dismiss, the bankruptcy court considered evidence outside of

the pleadings in the form of affidavits and therefore elected to treat Burbidge & Mitchell's

motion to dismiss as a motion for summary judgment.  After the hearing, the bankruptcy court

issued a written order on July 23, 2003, denying Burbidge & Mitchell's motion.

The bankruptcy court ruled that the doctrine of res judicata did not apply because

Burbidge & Mitchell had failed to satisfy each of the following four elements which are required

in the Tenth Circuit:

> (1) the prior suit must have ended with a judgment on the merits; (2) the parties
> must be identical or in privity; (3) the suit must be based on the same cause of
> action; and (4) the plaintiff must have had a full and fair opportunity to litigate the
> claim in the prior suit.

*Plotner v. AT&T Corp.*, 224 F.3d 1161, 1168 (10th Cir. 2000) (quoting *Nwosun v. General Mills*

*Rests.*, 124 F.3d 1255, 1257 (10th Cir. 1997).  (C&M App. at 0745).  The bankruptcy court held

that Burbidge & Mitchell had satisfied the first element because the confirmation of C&M's Plan

of Reorganization constituted a final judgment in a bankruptcy proceeding.  (C&M App. at

4

0746).  The second element was also satisfied because both parties were participants in the

Chapter 11 confirmation process.  (*Id*.).  However, the third and fourth elements were not

satisfied because there was no discussion or valuation of any potential claim against Burbidge &

Mitchell at the confirmation hearing.  (*Id*.).  Because any claim by C&M against Burbidge &

Mitchell was irrelevant to C&M's Plan of Reorganization, the bankruptcy court would have most

likely refused to consider valuation of any such claim had it been raised.  (C&M App. at 0747).

Therefore, "C&M's claim against Burbidge & Mitchell was not litigated at confirmation, and no

opportunity to litigate the claim at confirmation was afforded because the issue would have been

irrelevant to the plan confirmation process."  (*Id*.).

Additionally, the bankruptcy court found that although C&M's failure to disclose the

existence or value of the legal malpractice claim against Burbidge & Mitchell in the underlying

bankruptcy case was "inexcusable and is most likely criminal," the bankruptcy court was bound

by legal precedent in the Tenth Circuit which at the time had specifically declined to adopt the

doctrine of judicial estoppel.  *See U.S. v. 162 Megamania Gambling Devices*, 231 F.3d 713, 726

(10th Cir. 2000); *see also McGuire v. Continental Airlines, Inc.*, 210 F.3d 1141, 1145 n.7 (10th

Cir. 2000) ("[I]t is well established that judicial estoppel does not exist in the Tenth Circuit.")

(citing *Webb v. ABF Freight System, Inc.* 155 F.3d 1230, 1242 (10th Cir. 1998).

Burbidge & Mitchell appealed the denial of its motion to the District Court and on

September 19, 2005, this Court entered an order remanding the case to the bankruptcy court on

the sole issue whether C&M is judicially estopped from pursuing the causes of action asserted in

the legal malpractice adversary proceeding.  This Court based its ruling on the decision of the

United States Court of Appeals for the Tenth Circuit in *Johnson v. Lindon City Corp.*, 405 F.3d

5

1065 (10th Cir. 2005), which recognized the doctrine of judicial estoppel in the Tenth Circuit. This Court specifically retained jurisdiction of the appeal only as it pertained to the bankruptcy court's denial of Burbidge & Mitchell's motion on res judicata grounds, and stayed that portion of the appeal pending further proceedings on the judicial estoppel issue.

The bankruptcy court held a hearing after remand on Burbidge & Mitchell's motion on May 17, 2006, pursuant to the remand order of this Court.  At the hearing, the bankruptcy court made conclusions of law on the record, in addition to incorporating by reference the factual findings that were made in the original bankruptcy court order dated July 23, 2003.  Based on the findings of facts and conclusions of law, the bankruptcy court entered a written order on June 9, 2006, granting Burbidge & Mitchell's motion on judicial estoppel grounds and dismissing C&M's legal malpractice claims and the adversary proceeding with prejudice.

C&M timely appealed the bankruptcy court's ruling on June 15, 2006, and this appeal after remand was originally assigned to Judge Campbell.  The parties stipulated to a motion to consolidate the appeal after remand into the original appeal already pending before this Court and established a stipulated briefing schedule.  This Court then conducted a hearing on the appeal after remand on June 1, 2007.  At the hearing, the Court took the matter under advisement and requested that the parties submit additional briefing to develop and show support in the record before the bankruptcy court for new arguments made at the hearing by counsel for Burbidge & Mitchell.  Specifically, the Court requested briefing on Burbidge & Mitchell's assertion that C&M gained an unfair advantage by failing to disclose the potential Burbidge & Mitchell claim to the bankruptcy court, and how that inured to the detriment of both the bankruptcy system and Burbidge and Mitchell.

6

## IV.   DISCUSSION

### A.   Standard of Review

There is a disagreement between the parties regarding the applicable standard of review to be applied to this appeal from the bankruptcy court.  Rule 8013 of the Federal Rules of Bankruptcy Procedure provides that:

> On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings.  Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

The standard of appellate review of conclusions of law, on the other hand, is not the clearly erroneous rule.  10 Collier on Bankruptcy ¶ 8013.04 (15th ed. 2006).  "[I]nstead, the appellate tribunal reviews conclusions of law *de novo* and may substitute its own legal conclusions for those of the bankruptcy court."  *Id.* (citing *In re Yonikus*, 996 F.2d 866, 868 (7th Cir. 1993)); *see also Dalton v. IRS*, 77 F.3d 1297, 1302 (10th Cir. 1996)).

However, regardless of which standard of review is applicable, abuse of discretion or *de novo*, both Burbidge & Mitchell's judicial estoppel and res judicata arguments fail.

### B.   Burbidge & Mitchell Cannot Prevail Under a Theory of Judicial Estoppel

The Tenth Circuit adopted the doctrine of judicial estoppel in *Johnson v. Lindon City Corp.*, 405 F.3d 1065 (10th Cir. 2005).  Judicial estoppel is an "equitable doctrine designed to protect the integrity of the court system," *Riazuddin v. Schindler Elevator Corp.*, 363 F.R. 177, 185 (B.A.P. 10th Cir. 2007), and has been defined by the Tenth Circuit as follows:

> [w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have

> changed, assume a contrary position, especially if it be to the prejudice of the
> party who has acquiesced in the position formerly taken by him.

*Johnson*, 405 F.3d at 1069 (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)).

In *Johnson*, the Tenth Circuit enumerated three elements used by the United States

Supreme Court in *New Hampshire v. Maine*, 532 U.S. 742 (2001), to inform a court's decision

whether to apply judicial estoppel in a particular case:

> **First**, a party's later position must be clearly inconsistent with its earlier position.
> Moreover, the position to be estopped must generally be one of fact rather than
> of law or legal theory.  **Second**, whether the party has succeeded in persuading a
> court to accept that party's earlier position, so that judicial acceptance of an
> inconsistent position in a later proceeding would create the perception that either
> the first or the second court was misled.  The requirement that a previous court
> has accepted the prior inconsistent factual position ensures that judicial estoppel
> is applied in the narrowest of circumstances.  **Third**, whether the party seeking to
> assert an inconsistent position would derive an unfair advantage or impose an
> unfair detriment on the opposing party if not estopped.

*Johnson*, 405 F.3d at 1069 (internal quotations and citations omitted)(emphasis added).  While

acknowledging that it is difficult to reduce judicial estoppel to any general formulation, the

Tenth Circuit has held that the three elements listed in *New Hampshire* and *Johnson* "are crucial

in deciding when to apply the doctrine."  *United States v. Villagrana-Flores*, 467 F.3d 1269,

1278 (10th Cir. 2006).

## 1.   Clearly Inconsistent Position

The bankruptcy court found that C&M failed to specifically disclose the details of its

legal malpractice claim against Burbidge & Mitchell, including an estimate of its value, in its

schedules and other statements required by the Bankruptcy Code.  According to Burbidge &

Mitchell, this finding satisfies the first factor of judicial estoppel because by omitting a specific

reference to its claim, C&M earlier represented to the bankruptcy court that no claim existed, which is inconsistent with the fact that it is now asserting its claim.

On the other hand, C&M argues that it has never taken an inconsistent position because it did in fact disclose in its bankruptcy schedules and monthly debtor in possession financial reports that it had potential claims against its former professionals, although C&M admittedly never disclosed the value of such claims. Furthermore, C&M specifically reserved by name any claims against Burbidge & Mitchell in the court-approved July 19, 2002 Settlement Agreement that was then incorporated into C&M's Disclosure Statement to all of its creditors, including Burbidge & Mitchell. C&M's Chapter 11 Plan of Reorganization not only specifically implemented the Settlement Agreement, but retained all contingent claims, whether or not there was pending litigation, for C&M to pursue post-confirmation.

The bankruptcy court found that C&M should have "provided detailed information and an estimate of the value" of the potential claim against Burbidge & Mitchell. (C&M App. at 0750). However, stating that the amount of a potential claim is unknown does not rise to the level of being <u>clearly inconsistent</u> with C&M later asserting its legal malpractice claim. This is not a case where C&M asked its creditors to accept less than 100% of their claims while it was hiding assets from the bankruptcy court. To the contrary, C&M never represented that it had no legal malpractice claim against Burbidge & Mitchell. Actually, C&M made disclosures that, while lacking in detail according to the bankruptcy court, are all consistent with its current position. Not only did C&M disclose that it had potential claims against professionals in its bankruptcy filings, but more specifically, it reserved any potential claims against Burbidge & Mitchell in the Settlement Agreement which was incorporated by the Plan of Reorganization.

9

C&M did not assert a clearly inconsistent position in its bankruptcy case with what it is now asserting in the legal malpractice adversary proceeding. Based on the facts in the record, the bankruptcy court did not conclude, nor could it have concluded, that C&M asserted a clearly inconsistent position in its Chapter 11 case. Therefore, the first element of judicial estoppel has not been satisfied.

<b>2.      <u>Success in Persuading Court to Accept Earlier Position</u></b>

Burbidge & Mitchell argues that the correct consideration under this factor is whether C&M was successful in obtaining confirmation of its bankruptcy plan, and not whether C&M actually convinced the bankruptcy court that it did not have a legal malpractice claim against Burbidge & Mitchell. In other words, because C&M's failure to disclose was an abuse of the judicial process, the confirmation of its Plan of Reorganization was the result of a successful representation that the only major asset of the bankruptcy estate was real estate and that there was no claim against Burbidge & Mitchell.

C&M argues that because the subject of a claim against Burbidge & Mitchell was never at issue before the bankruptcy court that it could not have been "successfully maintained" by C&M. Essentially, C&M's position is that the valuation of a contingent legal malpractice claim was irrelevant to the confirmation of its Chapter 11 Plan of Reorganization because the only asset that mattered was C&M's real property which, when sold, would provide full payment for all of C&M's creditors. In fact, the bankruptcy court even acknowledged that the valuation of any claim against Burbidge & Mitchell would not have been considered during the confirmation process because the valuation of any assets other than C&M's real property was "unnecessary and irrelevant to the confirmation process." (C&M App. at 0746). Therefore, confirmation of

10

the Plan of Reorganization was not based upon or affected by the failure to fully disclose a claim against Burbidge & Mitchell, and C&M did not mislead the bankruptcy court into accepting an inconsistent position with regard to the potential claims against Burbidge & Mitchell.

Recently, the Bankruptcy Appellate Panel for the Tenth Circuit addressed the issue of judicial estoppel in a Chapter 7 case where the debtor had failed to disclose a personal injury claim. *See Riazuddin* 363 B.R. 177. The Tenth Circuit B.A.P. began its analysis of this second element by noting that it "requires both that the court accepted the inconsistent position, and that the party to be estopped 'succeeded' in some way." *Id*. at 186. In *Riazuddin*, "[t]he fact that a discharge was granted does not demonstrate that the bankruptcy court was misled or that the Debtor 'succeeded' in the bankruptcy case as a result of the omission of the claim." *Id*. The debtor would have received the same discharge regardless of the assets that were listed in the schedules. *Id*. "Furthermore, the [debtor's] current position will impose no unfair detriment on [the escalator company]. At most, the [escalator company] will be denied the windfall it had hoped to receive by avoiding further litigation and any potential liability on the claim." *Id*. 187.

Although C&M filed a Chapter 11 reorganization and not a Chapter 7 liquidation, similar reasoning can be applied to the bankruptcy court's application of judicial estoppel. Here, the bankruptcy court's approval of C&M's Plan of Reorganization is not the adoption in any way of a position that C&M had no claims against Burbidge & Mitchell. As in *Riazuddin*, the bankruptcy court's findings of fact do not support the legal conclusion that C&M somehow succeeded in persuading the bankruptcy court to accept a position that there was no legal malpractice claim against Burbidge & Mitchell.

The fact that C&M obtained confirmation of its Plan of Reorganization does not

demonstrate that the bankruptcy court was misled, particularly where C&M's creditors were paid in full plus interest, and the bankruptcy court itself reasoned that a potential claim against Burbidge & Mitchell would have been irrelevant.  Therefore, the second element of judicial estoppel has not been satisfied.

### 3.      Unfair Advantage or Unfair Detriment

The bankruptcy court did not find that C&M either gained any type of unfair advantage over Burbidge & Mitchell, or that Burbidge & Mitchell detrimentally relied on the nature of C&M's disclosures.  Actually, it appears that Burbidge & Mitchell was aware of the legal malpractice claims during the pendency of the bankruptcy proceedings and it should have come as no surprise when C&M actually filed the claims in state court.

The record supports the fact that Burbidge & Mitchell knew of C&M's potential legal malpractice claims against it prior to the bankruptcy proceedings.  (C&M App. at 0330 & 0704).  Moreover, Burbidge & Mitchell was also aware during the bankruptcy proceedings that C&M intended to preserve any potential claim that it had against Burbidge & Mitchell.  (C&M App. at 0717).  The most telling facts supporting Burbidge & Mitchell's knowledge are those surrounding the July 19, 2002 Settlement Agreement wherein C&M specifically listed Burbidge & Mitchell as persons or entities that were not released under the agreement.  Before the settlement agreement was approved by the bankruptcy court, Richard Burbidge allegedly called C&M's counsel and stated that Burbidge & Mitchell would not allow the settlement agreement to be approved unless it provided for a release of Burbidge & Mitchell.  (*Id*.).  Burbidge & Mitchell did not object to the Settlement Agreement and that same agreement was incorporated into C&M's Plan of Reorganization which preserved all potential causes of action for the

12

reorganized debtor.

Additionally, Burbidge & Mitchell argues in its supplemental briefing that it or other interested parties may have acted differently in the bankruptcy proceeding had C&M disclosed all of the particulars about its potential claims.  However, the record of the proceedings before the bankruptcy court does not support this type of speculative argument about what might have happened.[2]

C&M did not obtain an unfair advantage in its bankruptcy case and therefore the third element for judicial estoppel has not been satisfied.

## C.  The Bankruptcy Court Correctly Found That Burbidge & Mitchell Cannot Prevail Under a Theory of Res Judicata

Also before the Court is Burbidge & Mitchell's original appeal of the bankruptcy court's order of July 23, 2003.  The Court specifically retained jurisdiction of the res judicata issue pending further proceedings on the judicial estoppel issue.  Prior to remanding the judicial estoppel issue to the bankruptcy court, the parties had the opportunity to fully brief the res judicata issue before this Court.  Having reviewed the portion of the bankruptcy court's order

---

[2]  The Court allowed the parties to file additional briefing to address new arguments raised at the June 1, 2007, hearing by counsel for Burbidge & Mitchell.  Burbidge & Mitchell argued that C&M derived an unfair advantage and that Burbidge & Mitchell and other bankruptcy participants suffered an unfair detriment as a result of C&M's non-disclosure of the specifics of its potential legal malpractice claim.  Specifically, Burbidge & Mitchell argued that C&M gained an unfair advantage in negotiations with its equity owners who were unaware of the potential legal malpractice claim and who may have acted differently in negotiations during the bankruptcy proceedings to relinquish their interests in C&M.  Also, by not disclosing the potential claims, C&M avoided the risk of competing proposals to its proposed plan being submitted to the bankruptcy court by either its own equity partners, or other creditors.  Because of their lack of knowledge of the potential legal malpractice claims, these parties did not develop agreements between themselves to negotiate and propose a different plan of reorganization than that proposed by C&M.  Burbidge & Mitchell's arguments are not supported by the record before the bankruptcy court.  The only support cited by Burbidge & Mitchell for possible competing plans is oral argument made by its own counsel to the bankruptcy court as though that were evidence on which the bankruptcy court must have relied in imposing judicial estoppel.  Furthermore, the record does not support the argument that C&M's equity holders were unaware of the potential malpractice claim.  The additional briefing not only failed to disclose any record evidence to support Burbidge & Mitchell's claims, but also improperly restated earlier arguments.  The Court regrets allowing the extra briefing which only served to delay and make more expensive the process.

denying Burbidge & Mitchell's motion to dismiss on res judicata grounds, the relevant law, and the arguments of counsel, the Court now AFFIRMS the bankruptcy courts ruling.

## V.   CONCLUSION

Based on the foregoing, the Court REVERSES the bankruptcy court's order of June 9, 2006, and finds that Burbidge & Mitchell's motion should not have been granted on judicial estoppel grounds.  The Court also AFFIRMS the bankruptcy court's order of July 23, 2003, and finds that the bankruptcy court correctly denied Burbidge & Mitchell's motion on res judicata grounds.

IT IS SO ORDERED.

DATED this 2nd day of October, 2007.

_____
Dee Benson
United States District Judge

14